1
2
3
4
5

**Genet McCann**
**AVALON LAW, LLC**
**PO BOX 160492**
**Big Sky, MT  59617**
Avalonlaw@gmail.com

6
7
8
9

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **GENET MCCANN** )<br><br>      **Plaintiff,** )<br><br>v. )<br><br>**The Supreme Court of the State of** )<br>**Montana;** Chief Justice Mike McGrath, in )<br>his official capacity as  Chief Justice of the )<br>Montana Supreme Court; )<br><br>**The COMMISSION ON PRACTICE of** )<br>**the Supreme Court of the State of** )<br>**Montana;** Ward Taleff, in his official )<br>capacity as Chairman of the Commission On )<br>Practice; )<br><br>**OFFICE OF THE STATE** )<br>**DISCIPLINARY COUNSEL,** Michael )<br>Cotter Chief Disciplinary Counsel, in his )<br>official capacity; Jon Moog, deputy )<br>disciplinary counsel in his official capacity )<br><br>      **Defendants/Respondents.** )<br> ) | Case No. _____<br><br>**VERIFIED COMPLAINT FOR**<br>**DECLARATORY AND INJUNCTIVE**<br>**RELIEF**<br><br>**Request a Jury Trial**<br><br><br>**Underlying State Court Proceeding**<br>**Before the Montana Supreme Court:**<br>**ODC No. 17-110/PR 16-0670** |

1

## EXHIBIT INDEX

**Ex. 1:** Emergency Rule 12(b)(6) Motion to Dismiss Contempt Charge/Hearing

.................................................................................................... 12,13

**Ex. 2:** Order RE: Motion To Dismiss ........................................................ 2

**Ex. 3:** My Response to Informal Complaint ............................................ 6

**Ex. 4:** The Guardian's Informal Complaint ......................................... 7, 9

**Ex. 5:** Tina Morin's Response to Guardian's Informal Complaint ........................ 7

**Ex. 6:** Sept. 24, 2013 Order of appointments........................................ 9, 19

**Ex. 7:** *In re J.A.L.*, 2014 MT 196................................................... 9, 16

**Ex. 8:** Association Agreement with Disability Rights of Montana ...................... 10

**Ex. 9:** 42 U.S.C. Sec. 15043 ........................................................ 10

**Ex. 10:** §53-20-163, MCA ............................................................ 10

**Ex. 11:** MRLDE ....................................................................... 8, 12

**Ex. 12:** Opening Brief in *in re J.A.L.* ........................................... 15, 19

**Ex. 13:** Tina Morin's Affidavit ...................................................... 7

**Ex. 14:** Ex. 2 To Motion For Annual Report and Request For Consistent and Regular Visitation........................................................................ 10

**Ex. 15:** ODC's Notice Respondent's Failure to Comply ............................... 12, 13

**Ex. 16:** COP's Order to Show Cause Why I am not in Contempt. ................ 9, 12, 13

**Ex. 17:** Ron's Informal Complaint ................................................... 17

**Ex. 18:** ODC's Response to Ron Lowney's Informal Complaint .......................... 17

**Ex. 19:** COP's Denial of R. Lowney's Informal Complaint.....................................17

**Ex. 20:** R. Lowney's Petition for Review to Mont. S.Ct.........................................17

**Ex. 21:** M.S.Ct.'s Order adopting COP adopting ODC 's .....................................17

**Ex. 22:** DRM threatened by Shapiro's Motion for Sanctions and immediately drops out ...........................................................................................................................17

**Ex. 23:** §72-5-315(2), MCA .....................................................................................23

**Ex. 24:** §72-5-312, MCA .................................................................................24, 26

**Ex. 25:** §72-5-316, MCA .........................................................................................27

**Ex. 26:** §72-5-321, MCA .........................................................................................28

**Ex. 27:** July 15, 2011, Report to the Court ...........................................................

**Ex. 28:** Art. VII, §2(3), MONT. CONST. ...............................................................31

**Ex.29:** §37-61-301, MCA .........................................................................................31

**Ex. 30:** §72-5-408, MCA ..........................................................................................33

## PRELIMINARY STATEMENT

1.    The Office of Disciplinary Counsel, the prosecutorial agent of the Montana Supreme Court, in concert with the Commission On Practice, the adjudicatory agent of the Montana Supreme Court, under color of the law, multiplied proceedings against me in bad faith, without hope of valid convictions.

2.    They sought to use the disciplinary proceedings to trump up charges and then violate every conceivable constitutional right, law and rule to silence and crush me, because I asserted my 1st and 14th Amendment rights against powerful members of the bar and bench to expose their criminal conduct in my mother's guardianship proceeding and related corporate dissolution proceeding. (See Amended Complaint in DV 18-042)

3.    Based upon the original 6 charges alleged by these powerful members of the bar, COP in league with ODC multiplied the charges exponentially into 15 charges, and held two COP/ODC proceedings, on March 23, 2018 to recommend 7 month suspension in ODC 17-110 (for the single contempt charge in the underlying ODC 17-110 proceeding that is the subject of this complaint) and disbarment in ODC 15-078 (the disciplinary proceeding instigated by the powerful members of the bar that is subject of the amended complaint in CV 18-042).

4.    I did not attend the COP hearings because my federal constitutional rights to

prepare a defense were systematically and thoroughly denied both at the trial court level and at the pre-trial stage of the disciplinary proceedings.  One day before the hearing COP denied my federal constitutional right to present the testimony of Sean Frampton after ODC forced me to disclose that he would testify that Judge Manley are tight friends and he saw them recently together in Whitefish at a Wold' family gathering, including Judge Manley's personal judicial assistant Chantel Wold McCauley, and that Chair Tracy Axelberg who is presiding over ODC 15-078 knows they are tight friends.  (See Amended Complaint in DV 18-042)

5.     Tracy Axelberg denied my federal constitutional right to present powerful credible testimony to prove that my allegations are true.  It's rigged.  (Id.)

6.     In addition, COP/ODC engaged in a systemic effort from the beginning  to prevent me from obtaining the evidence in the exclusive control of Judge Manley and Doug Wold. Pursuant to Mont. Code Anno, §26-1-206(5), "[e]vidence willfully suppressed would be adverse if produced" demonstrates that COP/ODC are engaged in the cover up.

7.     There is no opportunity in state court to have my constitutional defense considered since the Montana Supreme Court white washed the facts and failed to consider 12+ federal constitutional arguments to affirm the null and void orders and sanctions, that denied me the opportunity for discovery, in protection of Doug Wold and Judge Manley.

8.     Because the Montana Supreme Court did the same thing in the appeal of *in re J.A.L.,* there is no opportunity in state court for the consideration of my federal constitutional defense in ODC 17-110.  It white-washed facts, disregarded J.A.L.'s federal constitutional claims and rights, to uphold the unbridled discretion of its district court judge and the court appointee.  It upheld the patently unconstitutional guardianship procedural statutes and null and void guardianship appointments, that denied J.A.L. at the onset, the right to be heard through counsel.

9.     In the face of great, immediate and impending irreparable harm set to occur next week on April 25 and April 29th, when the Montana Supreme Court disbars and suspends me, because I exercised 1st and 14th Amendment rights on behalf of J.A.L., my mother and myself, TEMPORARY RESTRAINING ORDER, IS WARRANTED.

10.    This case also present two exception grounds for granting immediate injunctive relief.  There is the bad faith use of the disciplinary proceedings to silence 1st and 14th Amendment rights, but the disciplinary proceedings itself is patently and flagrantly unconstitutional in violation of separation of powers.  The inordinate concentration of exclusive power over attorneys conduct has perverted the moral intent of ethical rules into a inquisitorial proceedings to protect influential bar and bench members.

11.    A particularly exception circumstance exists here since these disciplinary

4

proceedings are also based upon a patently unconstitutional guardianship statutes that grants unbridled discretion to the district court judge and its appointees in violation of an individual's fundamental right to be heard through counsel before their individual autonomy is taken and in violation of their fundamental rights to retain the constitutional guarantees under the Bill of Rights absent a least restrictive alternative that promotes a compelling state interest.

12.   These highly exceptional circumstances warrant immediate injunctive relief.

## STATEMENT OF FACTS

13.   Because I have the evidence that these influential bar members engaged in felony tampering,  embezzlement and mail fraud, and I sought to expose the evidence in my mother' guardianship case and a companion corporate dissolution case, I have become a target of the Montana Supreme Court's bench and bar, to be sanctioned, silence and disbarred.  (See Am. Compt. in CV 18-042)

14.   In these civil cases I have endured $70,000 in sanctions as a pretext to punish and silence me because I exercised my 1st and 14th Amendment fundament rights to redress criminal misdeeds.

15.   The Montana Supreme Court abused the legal machinery when it upheld Judge Manley's sanctions, based upon white-washed facts and a flagrant disregard for federal constitutional claims and rights. (See Am. Copt. CV 18-042)

5

16.     Because I am an attorney, the disciplinary proceedings affords a three-way pincher attack to silence and crush me.

17.     Accordingly, ODC/COP initiated the underlying proceedings in ODC 17-110 that is the subject of this injunction to concocted a set of 7 charges based upon lies and sheer abuse of the legal machinery to say black is white and white is black just because they hold the power of the public trust to do it.

18.     The implication is that I must be a real amoral attorney who deserves her comeuppance, but the truth is that I did two innocent things:  1) I exercised my 1st Amendment right to recuse the district court judge because he nominated, then appointed his very dear close friend, Doug Wold, onto my mother's multimillion dollar estate to charged her $392, 980.28 to manage her estate that is already managed by professional financial services for a fraction of the cost; and 2) I agreed to advocate for J.A.L.'s 1st and 14th Amendment rights in a guardianship case that reduced her to a ward of the state without the opportunity to be heard through counsel.

19.     I was originally charged in ODC 15-078 because the two powerful bar members availed themselves of the disciplinary process that is used to silence bar members they singled out for retribution.

20.     Although I provided the facts and evidence to ODC to criminally charge Doug Wold and Mark Parker and Casey Emerson, ODC did not investigate them. I was the target of the bench and bar, not them.  (**Exhibit 3:** My Response to

Informal Complaint)

21.   When ODC received an informal complaint from the Bugni's, the guardians *in re J.A.L.* and in the course of their unlawful investigation, my name came up (because I agreed to represent J.A.L.), soon I was the target of their unlawful investigation that resulted in 7 additional charges instituted by both ODC/COP.

22.   It did not matter that the allegations in the informal complaint in the J.A.L. were not against me.  I was not mentioned in their complaint.  (**Exhibit 4:** Bugnis' Informal complaint)

23.   It did not matter that the Bugnis' did not allege facts to establish grounds to discipline Tina Morin.

24.   The fact is Tina Morin was implicated because she certified my filings in Judge Manley's court.  She was warned not to help me or thing would not go well for her.  (**Exhibit 13:** Aff of Tina Morin, ¶17)

25.   Therefore, it did not matter that ODC exceeded its lawful authority to conduct investigation in violation of 4th Amendment right against unlawful search and seizures and its own rules, Montana Rules for Lawyer Disciplinary Enforcement.  (**Exhibit 5:** Tina Morin's Response to Guardian's Informal Complaint)

26.   Rule 5B, MRLDE establishes ODC's jurisdiction to conduct an investigation.  Unless the factual allegations in the guardian's complaint, taken as true, establish a violation of the Montana Rules of Professional Conduct, ODC

7

does not have probable cause to compel an investigation.  (**Exhibit 11**:  MRLDE, Rule 5)

27.    The factual allegation that Tina Morin was harassing their attorney in email communications does not establish an ethical violation under the Montana Rules of Conduct.  ODC has never charged Tina Morin based upon the allegations in the Bugnis' informal complaint is proof that ODC knows there was no basis for investigating her.  ODC was on a witch hunt.

28.    Regardless of their lawlessness, they did not find anything so they had to concoct it and so they did.

29.    They simply twisted the truth so that documents said things that they did not. The record did not mean anything.  All of it was subject to alterations by the ODC.  ODC has the power to say black is white and white is black, and there wasn't anything I could do, because it already knew that the final arbiter of the proceedings, the Montana Supreme Court wanted me out.  They were carrying out the will of their superior, the Montana Supreme Court.

30.    For example, ODC claims that J.A.L. has a court-appointed attorney when I communicated with J.A.L. and therefore I violated Rule 4.2 – Communication with person Represented by Counsel, and I was incompetent in violation of Rule 1.1 for doing so, and failed to exercise independent professional judgment for attempt to represent J.A.L. in violation of Rule 2.1., that was a conflict of interest to her husband of 50 years, therefore I also violated 1.7, and because I refused to

disclose confidential communications in the course of their unlawful

investigation, I violated Rule 1.8, MRPC and 8A(6), MRLDE, even though Rules

1.8 and 1.6 justifies my objection.   (**Exhibit 16:** ODC's Formal Complt. in ODC

17-110)

31.   However, if you read Bugnis' Informal complaint, the guardians refer to

Debbie Churchill <u>as J.A.L.'s guardian ad-litem, not counsel</u>.  (**Exhibit 4:**

Guardian's Informal Complaint, p.2)

32.   The record is also clear.  Judge Kruger's Order identifies Debbie Churchill as

J.A.L.'s guardian ad-litem. (**Exhibit 6:** Judge Krueger's September 24, 2013

Order, p.1, lines 17-18)

33.   The Montana Supreme Court, on appeal, identifies Debbie Churchill as

J.A.L.'s guardian ad-litem.  (**Exhibit 7:**  In re J.A.L., 2014 MT 196, ¶4)

34.    ODC did not have a basis in the record for asserting that Debbie Churchill is

J.A.L.'s attorney.  The 2011 ex parte order ODC relies upon was clearly

superseded by the district court's September 24, 2013 Order which held that

Churchill represented J.A.L. as a guardian ad-litem.

35.   The Montana Supreme Court then affirmed, on appeal, that Churchill was

J.A.L.'s guardian ad-litem.

36.   On November 19, 2015, J.A.L.'s executed written termination of Debbie

Churchill's representation that was made part of, the record without objection.

(**Exhibit 14**: Termination Notice, Ex. 2 To Motion For Annual Report and

9

Request For Consistent and Regular Visitation, p. 5)

37.     On November 19, 2015, J.A.L., J.A.L.'s written request for representation was also entered into, and made part of, the record without objection. (**Ex. 14**: Request for legal representation, Ex.2 To Motion For Annual Report and Request For Consistent and Regular Visitation, pp. 9, 12)

38.     By October 20, 2016, almost a year later, I entered into an association with Disability Rights of Montana (DRM) and, under its federal mandate, accessed and spoke with J.A.L.

39.     By that time, Churchill was not J.A.L.'s attorney and even if she was, I had lawful access to J.A.,L. under DRM's federal mandate. (**Exhibit 8:** executed Association Agreement with DRM confirming that on October 20, 2016, we entered into an association to represent J.A.L. "on behalf of Disability Rights of Montana.")

40.     Disability Right of Montana is a state protection and advocacy program for individuals with disabilities. They are authorized by 42 U.S.C. 15043(a)(2)(B)&(H) (in conjunction with §52-30-163 (5), MCA) with the federal-state mandate and power to access individuals with disabilities and investigate for the purpose of protecting and advocating for the rights of the disabled population of Montana. (**Exhibit 9**: 42 U.S.C. §15043); (**Exhibit 10**: §52-30-163, MCA)

41.     Under Rule 4.2, I am authorized to communicate with a person represented

by counsel, if I am "authorized to do so by law."

42.    Rule 4.2 – Communication with person Represented by Counsel – states that [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, ***unless the lawyer has the consent of the other lawyer or is authorized to do so by law*** or a court order."

43.    Therefore, there is no basis under fact or law for ODC to have charged me with the Rule 4.2 violation and all of the other 6 charges that are implicated because ODC alleged that I violated Rule 4.2., MRPC.

44.    This proceeding was brought for improper purposes in violation of Rule 11, M.R.Civ.P. demonstrates that is brought in bad faith to silence and vex me.

45.    The rules do not matter.  The U.S. constitution does not matter.

46.    When I made the legal argument that Rule 5B of MRLDE did not grant ODC jurisdiction to investigate Tina Morin or myself, Chairman Taleff was offended that I would assert the rule of law and call for prosecutorial restraint, plainly set out in the Rules of Lawyer Disciplinary Enforcement.  It was an insult to his authority that I challenged ODC's jurisdiction.  It was clear that he was identified with ODC as one single inquisitorial body who viewed any challenge insurrection.

47.    Once Jon Moog disclosed his intent to charge me with 6 charges, he did not follow procedure that required him to file leave with the COP review panel.

(**Ex.11:** Rule 10, MRLDE)

48.    Rule 10, MRLDE granted me an opportunity to respond.  There was no review and no opportunity to respond.  I was simply charged because that was what Jon Moog wanted to do and he appeared to know that what he wanted was exactly what was going to happen, and it did.

contempt proceedings

49.    COP joined in the prosecution when Chairman Taleff instituted contempt proceedings against me.  COP, Chairman Ward Taleff, in league with ODC Jon Moog, accused me of contempt when the undisputed facts and law demonstrated I was in compliance with COP's order to disclose.  (**Ex. 1:** Emergency Rule 12(b)(6) Motion to Dismiss Contempt Charges and Hearing)

50.    There is no basis for ODC to file a notice of failure to comply, and there was no basis in law or fact for COP Chairman Taleff to order show cause why I should not be found in contempt.  (**Exhibit 15:** ODC's Notice of Respondent's Failure to Comply) (**Exhibit 16:** Order to show cause why I should not be found in contempt)

51.    I complied with the order to produce in 10 days.  (**Exhibit 1**: Emergency Rule 12(b)(b) motion to Dismiss Contempt Charge and Hearing)

52.    I pointed out that because the November 27, 2017 Order was sent via U.S.

mail, I lawfully availed myself of Rule 6, M.R.Civ.P[1]. to apply 3 extra days for delivery of the documents that the November 27th Order mandated compliance in 10 days. Because the 3rd day fell upon a Sunday, I had until Monday, December 11, 2017, the date I filed and ODC admitted that I filed on December 11, 2017. (**Ex. 1**)

53.   COP Chairman Taleff denied my motion. He purposefully misconstrued the facts to wrongfully claim that the "Office of Disciplinary Counsel simply filed a notice indicating Respondent's time of providing it with the required documents" when ODC clearly filed a Notice of Failure to Comply. (**Exs.**: 15 & 16)

54.   COP Chairman Taleff also denied my motion claiming that there was no claim or charge so there is no basis for my motion. He was going for the juggler. (**Exhibit 2**: Order re: Motion to Dismiss, p.2)  However, if you read his order to show cause he plainly states that the purpose of the hearing is for me to come forward and show why I should not be found in contempt.

55.   COP Chairman Taleff acted in bad faith, lying in wait, to knowingly misrepresented facts in the record to allow an improper contempt proceedings to continue against me when there was no factual or legal basis for it. The contempt proceedings is frivolous because I complied and them both knew it. It was a bad-faith use of the disciplinary proceedings to harass and vex me.

56.   Now, Chairman Taleff recommends 7 month suspension when I complied

---

[1] According to Rule 12, MRLDE, the Montana Rules of Civil Procedure applies.

and he knows it, and ODC knows it.

57.  Under the Show cause Rule, Rule 24, it at the most grants COP to issue 30 month suspension and he recommends 7 months when I didn't do anything wrong and he knows it.

58.  The rule of law means nothing here.  The only thing that matter is that I am done away with as quickly as possible.  It's blatant outrageous abuse of the legal machinery.

No opportunity for my federal constitutional defenses to be heard in state court

59.  There is no opportunity for my constitutional or statutory defenses to be heard by the Montana Supreme Court since the Montana Supreme Court failed to consider my 12+ constitutional claims that form the basis for my defense in both of these disciplinary proceedings and failed to consider J.A.L.'s federal constitutional and statutory arguments for reversal.  It simply refuses to consider what it does not want to consider as though the arguments were never made.

60.  The conduct of the Montana Supreme Court violates federal equal protection of the laws, an argument I made to the Montana Supreme Court in my petition for rehearing.

61.  I stated on page 6 of My Petition for Rehearing *In re A.M.M., II*:

> Moreover, when this Court determined not to consider appeal of the Order
>
> Approving First Annual Account and the well-briefed arguments is a denial of due
>
> process and equal protection of the law that prejudiced the Appellants and A.M.M..
>
> "If a state creates a system for appellate review as an integral part of the system for
>
> finally adjudication …. The procedures used must comport with the demands of
>
> due process and equal protection." *Cooper v. McGrath*, 314 F.2upp.2d 967 (2004);
>
> See also *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830 (1985).

62.     The Montana Supreme Court ignored this federal constitutional argument too.

63.     J.A.L. 's federal constitutional arguments on appeal *In re J.A.L.* received the same disregard.  The Court refused to consider them.  It just ignored them.

64.     On her behalf, her husband's attorney asserted on appeal that J.A.L.'s federal due process right to be heard at the September 2013 hearing was categorically denied at a proceedings that deprived her of her 14th amendment fundamental rights to individual autonomy and to the privacy of her family/marital relationship. (**Exhibit 12:**  Appellant's Opening Br, pp.24-25.)

65.     Ron Lowney also asserted J.A.L.'s statutory enumerated rights to be present at the hearing, to present through counsel, to present evidence, to cross-examine, and her right to a jury trial that are set out in §72-5-315(4), MCA.  (**Ex. 12: Id.,** pp.24-25.)

66.    The Montana Supreme Court, in its opinion, *in re J.A.L.,* did not address J.A.L.'s federal constitutional rights.  By not considering her federal constitutional argument, the Montana Supreme Court demonstrates a disregard for the U.S. Constitution.  (**Exhibit 7:  *In re J.A.L.*,** 2014 MT 196)

67.    The state court's disregard for J.A.L.'s most fundamental rights under the U.S. Constitution has injured J.A.L.'s 1st and 14th Amendment rights to access the court, to petition for redress of the deprivation of her most fundamental core rights that defines fundamental individual freedom.

68.    She is a ward of the state because her 1st and 14th amendments were systematically disregarded by the state courts.  She is in a 24/7 locked down facility that does not permit her to call to her husband.  She is not free to come and go as she pleases.  She is told what to wear, who she sees, where she can and can't go. If she is even permitted to go anywhere at all, it is entirely up to the guardians who seldom come to around.  She is denied her martial relationship with her husband of 55+ years.  J.A.L.'s is warehouses and isolated.  She is forced to live out her days among Alzheimer patients, when she does not have the disease or any other mental impairment, and she wants to go home to be with her husband of 55 years who had been taking care of her for 30 years since she first contracted multiple sclerosis, a physical disability disease that affects her voice, gait and continence.

69.    The foregoing demonstrates that J.A.L. has suffered a substantial loss of her

1st and 14th Amendment freedoms. A convicted felon has more rights than J.A.L. Most convicted felons have a date of release to look forward to, to give them hope. J.A.L. has no release date to give her hope. J.A.L. has no recourse in state courts.

70. There is no Montana attorney will not touch her case because they fear the reprisals that would await them if they advocate for her 1st and 14th Amendment rights to be heard and retain counsel and to petition for the redress of her constitutional deprivations that has resulted in her own private hell.

71. The first line of attack in by opposing counsel motioning for sanctions in the guardianship case.

71. The attorneys at Disability Rights of Montana dropped this case as soon as they received Steve Shapiro's filings and threatens of sanctions. (**Exhibit22:** DRM threatened by Shapiro's Motion for Sanctions and immediately drops out)

Ron's Informal Complaint disregarded

72. Ron Lowney filed an informal complaint with the ODC. (**Exhibit 17:** Ron's Informal Complaint) ODC did not bother to investigate. (**Exhibit 18**: ODC's Response) Mr. Lowney appealed its decision to the COP. The COP did not bother to look into the matter and adopted ODC's findings. (**Exhibit 19**: COP's Response)

73. Mr. Ron Lowney appealed COP's decision to the Montana Supreme Court. **Exhibit: 20:** R. Lowney's Petition for Review to Mont. S. Ct.)

74. The Montana Supreme Court, without explanation, finding or analysis,

17

adopted ODC/COP findings and, true to form, refused to consider the federal

constitutional claim that  J.A.L. has been systematically denied legal counsel.

(**Exhibit 21:**  M.S.Ct.'s Order adopting COP adopting ODC's)


Patently unconstitutional guardianship statutes

75.     The guardianship procedural and substantive statutes, Mont. Code Anno. §

72-5-315(2),  §72-5-312, §72-5-316 and §72-5-321 are all patently unconstitutional

on their face and as applied.  The procedural statute § 72-5-315(2), MCA is

patently over-broad since it grants the district court judge unbridled discretion to

abridge an individual's fundamental 14th Amendment right to be heard though

counsel without demonstrating that his decision is the least restrictive alternative to

promote a compelling state interest.

76.     Mont. Code Anno. §72-5-312, §72-5-316 and §72-5-321 are all patently

unconstitutional on their face and as applied since they grant the guardian

unbridled discretion to abridge an individual's fundamental constitutional rights to

personal autonomy and to the privacy of family life and living arrangements

without demonstrating that her action is the least restrictive alternative to

promoting a compelling state interest.

77.     The 2011 and 2013 guardianship Orders are void on their face since the

district court violated §72-5-315(4) enumerated trial court rights that J.A.L. was

entitled to.  She was entitled to be present, to be present through counsel, to present

evidence, to cross examine testimony, especially the testimony of the court appointed visitor, the court -appointed physical and the court appointed G.A.L..

78.   The record demonstrates that J.A.L. was not present through counsel.  In the 2013 proceeding the G.A.L. made sure that J.A.L. was not present at the hearing in violation of 72-5-315(4), MCA.   (**Exhibit 12**:  Brief of Appellant in *In re J.A.L.*, pp. 23-25 (No. DA 13-0767)) (**Exhibit 6**:  September 24, 2013 Order, FOF 3, p.1)

79.   Because these are special and limited probate proceedings, an order is void on its face for lack of subject-matter jurisdiction when the court exceeds its statutory provisions.  Since the district court in *in re J.A.L.*, did not ensure that J.A.L. had an attorney and appeared at the 2013 proceeding, the 2011 and 2013 Orders are void on their face.

80.   The ODC charges have no hope of obtaining a valid conviction because the 2011 and 2013 Orders establishing the guardianship and conservatorship of J.A.L. are void on their face.  They defy the statutory procedures set out in 72-5-315 (4), MCA.  They were not followed in flagrant violation of 14th amendment due process because  J.A.L. was denied opportunity to be heard through counsel and was forced by the G.A.L. to stay at the facility rather than attend the hearing.

Irreparable injury

81.   The loss of and substantial impairment to First and Fourteenth Amendment

19

rights to be heard and petition for redress is immediate, great and irreparable.  COP

has recommended 7 month suspension for asserting J.A.L.'s First and Fourteenth

Amendment rights in her guardianship proceedings.

82.    The loss of and impairment of J.A.L.'s 1st and 14th Amendment rights is

irreparable.  Disability Rights of Montana is too intimidated to carry out their

mandate for fear that they will be punished as I am for attempting to represent

J.A.L.'s interest.  There is no one who is willing to step up to represent her in this

climate of fear and intimidation created because ODC goes after any attorney who

tries, and they have the unchecked power to do as they please.

83.    It's been seven years and I am the only attorney who stepped up and look

what has happened to me. .

84.    J.A.L.  has been systematically denied her 1st and 14th Amendment right to be

heard in her guardianship/conservatorship proceeding from the onset when the

district court, ex parte, ordered Debbie Churchill, as guardian ad-litem, to represent

J.A.L., with the power an duty of substitute judgment.

85.    Debbie Churchill never represented J.A.L.'s interest.

82.    In fact, she caused J.A.L. not to be present at the final guardianship hearing

that determined the guardianship and conservatorship presently.

83.     I am injured by her deprivations of free expression, since I was punished for

asserting, on her behalf, her right to be heard.

84.    The state court proceeding is, therefore, causing great, immediate and

20

irreparable injury and loss to First Amendment rights not only to myself, but also to J.A.L.  J.A.L. remains oppressed and disenfranchised of her civil liberties for more than 7 years.

85.  I face the grave loss of career and reputation because I exposed the criminal conduct of members of the bench and bar that are much more powerful than I.

86.  The exceptional circumstances of bad faith prosecution and patently unconstitutional statutes that injury free expression warrants an IMMEDIATE EMERGENCY TEMPORARY RESTRAINIGN ORDER pending a jury trial and final judgment on permanent injunctive and declaratory relief.

87.  This case is exceptionally extreme because there was never any *valid* basis for instituting the proceeding in ODC 17-110.

88.  Because two well-recognized independent grounds of exceptional circumstances warranting an injunction are both present in this case, an emergency injunction is appropriate to prevent further irreparable injury

89.  . **"The resulting loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes the irreparable injury**." Elrod *v. Burns*, 427 U.S. 347. 373-74 (1976)

90.  Therefore, Plaintiff McCann is entitled to immediate declaratory and injunctive relief from this Court.

## JURISDICTION AND VENUE

91.  This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question);

28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 1983 (civil rights), and the First and Fourteenth Amendments to the United States Constitution.

92.   The Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201, 2202, et seq. (declaratory and injunctive relief); 28 U.S.C. §1346;

93.   Venue for this action properly lies in the Helena Division of the District of Montana because Defendants are located and work, and reside in the Helena Division (except Chairman Taleff resides in Great Falls).

## PARTIES

94.   Plaintiff Genet McCann resides in Gallatin County in the State of Montana.

95.   Defendant Chief Justice Mike McGrath of the Montana Supreme Court works and based upon information and belief resides in Lewis & Clark County in the State of Montana;

96.   Defendant Ward Taleff is Chairman of Commission On Practice.  The office for the Commission On Practice is located in Helena where he conducts his official duties.  I believe that Ward Taleff resides in Great Falls, Montana.

97.   Defendant Michael W. Cotter is Chief Disciplinary Counsel for Montana's Office of Disciplinary Counsel.  Plaintiff McCann is informed, believes, and therefore alleges that Defendant Michael W. Cotter resides in Lewis & Clark County in the State of Montana.  Plaintiff is suing Defendant Michael W. Cotter in his official capacity only.